UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
==========================================X
GERGELY CSIKOS,

                              Plaintiff,

    -against-

S.M. CONSTRUCTION & CONTRACTING,
INCORPORATED and 230 PARK SOUTH
APARTMENTS, INC.,

                              Defendants.
==========================================X
230 PARK SOUTH APARTMENTS, INC.,

                         Third-Party Plaintiff,

    -against-

REMODEL ART CORP. and ALIN FLORIN VADANUTA,

                         Third-Party Defendants.
==========================================X
230 PARK SOUTH APARTMENTS, INC.,

                     Fourth-Party Plaintiff,

    -against-

IR HOLDINGS, LLC, PARKVIEW DEVELOPERS, LLC
and IAN REISNER,

                    Fourth-Party Defendants.
==========================================X

*FURTHER*
*SUPPLEMENTAL RULE*
*26 EXPERT DISCLOSURE*

*Docket No.: 18-cv-9598*
*(VEC)*

      Defendant/third-party plaintiff/fourth-party plaintiff 230 PARK SOUTH APARTMENTS,

INC., by its attorneys, PERRY, VAN ETTEN, ROZANSKI & KUTNER, LLP, as and for their

Further Supplemental Rule 26(a) Expert Disclosure, sets forth and identifies their witnesses as

follows:

1.      Ira J. Chernoff, M.D.

Dr. Chernoff is a Board Certified orthopedic surgeon.

Dr. Chernoff's expert report, supplemental expert reports, curriculum vitae and list of prior testimony are annexed hereto as **Exhibit "A"** to the response.

Dr. Chernoff was retained as an expert witness to conduct an independent medical examination of the plaintiff and is expected to provide testimony and opinions related to this examination, the contents of which are contained within the attached reports.  Dr. Chernoff's testimony will be based, as well, on his review of multiple sets of plaintiff's medical records, as well as diagnostic testing films and diagnostic testing film reports.  Based on his review of the medical records of Mr. Csikos, as well as the physical examination he conducted on October 17, 2019, Dr. Chernoff will opine that Mr. Csikos sustained a lumbosacral sprain and a cervical sprain as a result of the June 25, 2018 accident.  Further, plaintiff underwent a C4–C5 through C5–C6 surgical procedure by Dr. Lattuga. However, Dr. Chernoff opine that the cervical spine surgery undertaken by plaintiff was not indicated nor medically necessary as a result of the injury sustained on June 25, 2018.  Additionally, Dr. Chernoff will opine that there were bulging discs within plaintiff's back which were pre-existing and not causally related to the incident. Further, it will be opined that there was no acute injury shown, nor any acute herniations seen within the post-incident diagnostic testing films studies reviewed by Dr. Chernoff.

Dr. Chernoff will further comment on the lack of causal relationship of plaintiff's injuries and the lack of medical necessity for the spinal surgeries undertaken by plaintiff, as per his reports, including the lack of medical need for the August 6, 2020 surgery by Dr. Lattuga.

Dr. Chernoff will also provide rebuttal expert testimony in response to the testimony of plaintiff's experts, including testimony addressing the purported pain and suffering of Mr. Csikos, as well as any future recommended treatments and prognosis, and the purported permanency of plaintiff's injuries.

In addition to relying upon the information, facts and opinions set forth in the various medical records and deposition transcripts of Mr. Csikos, Dr. Chernoff may also rely upon discovery exchanged in this matter, the testimony reports given in this matter by other medical experts and non-party witnesses, his review of diagnostic film studies received prior to trial or at trial, and he will also testify based upon his training and experience within the field of orthopedic surgery and based upon excepted medical principles, applicable journals and professional and medical authorities.

2.      Roger A. Bonomo, M.D.

Dr. Bonomo is a Board certified neurologist.

Dr. Bonomo's expert report, supplemental expert reports, curriculum vitae and list of prior testimony are annexed hereto as **Exhibit "B"** to the response.

Dr. Bonomo was retained as an expert witness to conduct an independent medical examination of the plaintiff and is expected to provide testimony and opinions related to this examination, the contents of which are contained within the attached reports.  Dr. Bonomo's testimony will be based, as well, on his review of multiple sets of plaintiff's medical records, as well as diagnostic testing films and diagnostic testing film reports.  Based on his review of the medical records of Mr. Csikos, as well as the physical examination he conducted September 3, 2019, Dr. Bonomo will opine that Mr. Csikos sustained a lumbosacral sprain and a cervical sprain as a result of the June 25, 2018 accident.  Furthermore, although plaintiff underwent a C4–C5 through C5–C6 surgical fusion surgery, Dr. Bonomo will opine that the surgery was not

medically necessary nor was it related to the injuries allegedly arising from the accident as plaintiff's neurological examination was consistent with a resolved muscle strain, at most. Additionally, Dr. Bonomo will testify that his examination revealed no evidence of any objective injury to any nervous system or spine as a result of the occurrence and the radiographic findings were further noted to have been consistent with degenerative joint disease, resulting in a pre-existing disc bulge.  Any purported herniated discs will also be opined by Dr. Bonomo not to have been the cause of any alleged symptoms nor the effect of any specific trauma.

In addition, Dr. Bonomo will Dr. Bonomo will opine that the updated records of plaintiff, as well as the new surgical records do not establish the presence of a neurologic injury and that the August 6, 2020 surgical procedure undertaken by Mr. Csikos was not medically necessary, as set forth in his supplemental report.

Dr. Bonomo will also opine that there is no neurological disability involved with Mr. Csikos nor does Mr. Csikos require any further diagnostic testing or treatment, including but not limited to, additional MRIs, physical therapy, lumbar epidural steroid injections, cervical epidural steroid injections or invasive procedure of any kind.

3.    Alan B. Greenfield, M.D.

Dr. Greenfield is a Board Certified Radiologist.

Dr. Greenfield's expert report (previously exchanged), curriculum vitae and list of prior testimony are annexed hereto as **Exhibit "C"** to the response. Additionally,

Dr. Greenfield was retained as an expert witness to conduct a review of the diagnostic testing films studies of plaintiff and is expected to provide testimony and opinions related to his review of these films, the contents of which are contained within the attached reports.  Dr. Greenfield's testimony will be based, as well, on his review of the diagnostic testing films, the diagnostic testing film reports and relevant medical information or documentation

pertaining to the referrals for and the follow ups on treatments arising from the diagnostic testing film activities.

In addition, based upon his review of the diagnostic testing films, Dr. Greenfield will opine that the diagnostic testing films studies of plaintiff, from the date of the incident, including the lumbar spine x-ray films of Bellevue Hospital Center, confirm that Mr. Csikos was suffering from degenerative disc disease at the time of the incident, which was manifested at L1–L2, via degenerative bone spurs.  These bone spurs were chronic, longstanding and unrelated to the accident of June 25, 2018.  Additionally, multi-level narrowing and sclerosis of the lumbar vertebrae were noted from L3 through S1 in the facet joints which, despite plaintiff's age, are chronic and longstanding findings which were also unrelated to the subject incident.  These same lumbar films, also confirmed that there was no fracture or other finding that is apparently related to the June 25, 2018 accident.

Additionally, the CAT scan of plaintiff's brain taken on June 25, 2018 at Bellevue Hospital also will be noted by Dr. Greenfield to reveal a normal study with no sign of intracranial trauma and no evidence of any parenchymal hemorrhage, subdural hematoma or skull fracture.  Accordingly, Dr. Greenfield will opine that there is no finding of injury or condition related to the accident of June 25, 2018 seen within the CAT scan films of the brain.

Dr. Greenfield will also opine that the CAT scan films of June 25, 2018 of plaintiff's cervical spine from Bellevue Hospital also show no evidence of fracture, subluxation or any bony neural foraminal encroachment at any level nor was there any indication of disc herniations or other positive findings which would show an injury attributed to plaintiff's accident of June 25, 2018.

Incidental films of plaintiff's chest taken on June 25, 2018 will also be noted by Dr. Greenfield to show no evidence of injury, including the lack of a pulmonary contusion, infiltrator mass, as well as the lack of any pneumothorax pneumomediastinum or pleural effusion fluid.

Subsequent to the date of the incident, Dr. Greenfield will opine, as well, that MRI films studies from Wellness Diagnostic Imaging on July 19, 2018, less than one (1) month post-incident, revealed negligible degenerative disc bulging at C2–C3, C3–C4 and C4–C5. Dr. Greenfield will opine that these are highly likely to be asymptomatic incidental findings which are unrelated to the accident of June 25, 2018 and appear, further, to be findings that developed over a period of years, irrespective of Mr. Csikos' age. Dr. Greenfield also found no evidence of any fracture, focal disc herniation or any other objective finding attributable to the accident of June 25, 2018.

Dr. Greenfield will also opine that the diagnostic films studies from the July 24, 2018 MRI of plaintiff's lumbar spine, taken one (1) month post-incident at Wellness Diagnostic Imaging showed, when compared to additional films studies of Mr. Csikos taken on August 13, 2018, establish that the subsequent films are unchanged and confirm the presence of degenerative bone spur formations and degenerative facet joint changes from L3–L5, none of which are attributable to the accident of June 25, 2018. Further, the degenerative findings do not appear to have been stable when compared to the August 13, 2018 MRI of the lumbar spine. A Schmorl's node was also seen at the L1–L2 area which presents as a further, chronic degenerative finding, also unrelated to the incident, and the L4–L5 bulge seen in the July 24, 2018 film, along with the degenerative hypotrophy in the facet joints from L3–L1, are all chronic findings unrelated to the June 25, 2018 incident and the subsequent MRI also fails to show any fracture or focal herniation attributable to the accident. Additionally, the findings in the L4–L5 and the L3-

S1 disc spaces all remain without significant changes, when compared to the August 13, 2018 pre-surgery MRI.

Dr. Greenfield also compared the July 24, 2018 MRI, the August 13, 2018 MRI and the March 7, 2020 MRI of Mr. Csikos from Kolb Radiology and will opine that the 2020 films show no change in the degenerative disc disease within the L1–L4 area and that these findings are and remain chronic, degenerative and longstanding conditions that are not attributable to the June 25, 2018 accident.  Additionally, the L4–L5 disc bulge exhibits a "barely flattening of the dural sac without significant foraminal encroachment and can and remain stable".  Dr. Greenfield will further opine, consistent with his earlier film reviews, that the L4–L5 bulge is unrelated to the incident.  And, as it applies to L5–S1 disc space, Dr. Greenfield will opine that the March 7, 2020 films show mild degenerative disc bulging without deformity or encroachment on the dural sac.  Moreover, Dr. Greenfield will opine that this is a chronic evolving degenerative finding of minimal magnitude and with no clinical concern.  He will also opine that this not an example of a disc herniation and again, the conditions and findings at this level are unrelated to the June 25, 2018 incident.  Summarily, the March 7, 2020 films are noted to continue to show degenerative facet hypertrophy unrelated to the accident and, the films continue to show no evidence of fracture or focal disc herniations.

Dr. Greenfield also reviewed the March 7, 2020 MRI of the thoracic spine and will opine that the thoracic spine had extensive degenerative disc disease, along with chronic Schmorl's nodes and bone spurs.  Further, the thoracic spine MRI show evidence of a degenerative disc bulge at T3–T4, but without contact on the cord, spinal stenosis or neural foraminal encroachment so that the findings are mild in magnitude and are definitely chronic, degenerative and longstanding, as well as unrelated to the June 25, 2018 accident.  Additionally, small central disc herniations are noted at T6–T7 and T8–T9 with that barely indent the dural

sac, but contained no mass effect upon the spinal cord, nor any stenosis or foraminal encroachment.  Further, the herniations are seen on the background of underlying degenerative discopathy which, irrespective of plaintiff's age, showed no indicia of trauma nor any evidence of fracture, cord contusion, annular rupture or paraspinal hematoma which preclude these findings from being causally related to the June 25, 2018 incident.

Dr. Greenfield will further opine that the August 13, 2018 MRI of plaintiff's lumbar spine from Nova Medical Imaging show the same L1–L2 degenerative disc disease, with a bulging disc, bone spur formation and chronic Schmorl's node, along with degenerative disc bulging at L4–L5, barely in contact with the dural sac, but with adequately patent neuroforaminal bilaterally.  No disc herniations were seen, although the L5–S1 intravertebral disc, presented with a transitional segment, which represented a normal anatomical variant.  No fractures, spondylosis nor spondylolisthesis were seen nor is there any evidence of a penetrating injury or foreign body, only degenerative facet hypertrophy, irrespective of plaintiff's age.  Accordingly, Dr. Greenfield will opine that neither the L1–L2 nor L4–L5 findings were, in any way, related to the June 25, 2018 accident and specifically, the degenerative facet changes shown in these films are evidence of chronic, longstanding, degenerative changes.

A March 26, 2019 cervical spine, intraoperative fluoroscopy was also reviewed from New York Presbyterian Hospital.  This film study confirmed placement of an anterior surgical fusion device at C4–C5 and C5–C6, as well as excellent anatomical alignment and without any sign of loosening for the fixation device. There were no signs of complication seen in this intraoperative film.

Dr. Greenfield will also provide rebuttal expert testimony in response to the testimony of plaintiff's experts, including testimony addressing their interpretation of the diagnostic testing films and the causation between the incident and the injuries allegedly sustained by Mr. Csikos.

In addition to relying upon the above information, Dr. Greenfield may also rely upon any new discovery exchanged in this matter, the trial testimony given in this matter by other medical experts and non-party witnesses, and he will also testify based upon his training and experience within the field of radiology and based upon good and accepted medical principles, applicable journals and professional and medical authorities.

Defendant/third-party plaintiff 230 PARK SOUTH APARTMENTS, INC. reserves its right to update or supplement this list and disclosure and further reserves its right to call to testify at trial any additional witnesses named or disclosed by plaintiff, co-defendant or third-party defendants, and to further rebut any such new information or disclosures by new witnesses.

Dated: New York, New York
          March 4, 2022

Yours etc.,

PERRY, VAN ETTEN, ROZANSKI
     & KUTNER, LLP
Attorneys for Defendant/Third-Party Plaintiff
Fourth-Party Plaintiff
230 PARK SOUTH APARTMENTS, INC.
14 Wall Street
Suite 4D
New York, New York 10005
(212) 406-9710
File No.: 129010

BY:     *Jeffrey K. Van Etten*
             JEFFREY K. VAN ETTEN (9107)
             A Member of the Firm

TO:     HOLLY OSTROV RONAI, ESQ. (HO 3923)
        RONAI & RONAI, LLP
        Attorneys for Plaintiff
        The Ronai Building
        34 Adee Street
        Port Chester, New York  10573
        (914) 824-4777

        VINCENT M. AVERY, ESQ.
        FORD HARRISON, LLP
        Attorneys for Defendant
        S.M. CONSTRUCTION & CONTRACTING,
        INCORPORATED and
        Third-Party Defendants and
        Fourth-Party Defendants
        60 East 42nd Street – 51st Floor
        New York, New York  10165
        (212) 453-5900

## ___CERTIFICATE OF SERVICE___

This is to certify a copy of the foregoing was served upon all counsel of record by means of the Court's electronic filing system on this 4th day of March, 2022.


                                                   *Jeffrey K. Van Etten*

                                     JEFFREY K. VAN ETTEN (S.S. #9107)

                                         A Member of the Firm

*Docket No. 18-cv-9598 (VEC)*
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GERGELY CSIKOS,

                              Plaintiff,

        -against-

S.M. CONSTRUCTION & CONTRACTING, INCORPORATED and 230 PARK SOUTH
APARTMENTS, INC.,

                              Defendants.

*\*AND THIRD-PARTY ACTIONS*

---

### *FURTHER SUPPLEMENTAL RULE 26 EXPERT DISCLOSURE*

---

**PERRY, VAN ETTEN, ROZANSKI & KUTNER, LLP**
*Attorneys for Defendant/Third-Party Plaintiff/Fourth-Party Plaintiff*
*230 PARK SOUTH APARTMENTS, INC.*
**14 Wall Street**
**Suite 4D**
**New York, New York  10005**
**(212) 406-9710**
**§2103 (b) (5) Notice: Service of Papers by Electronic Means is Not Accepted**

---

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1.) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22  NYCRR 1200.41-a.*

*Dated:*___**March 4, 2022**_____                    *Signature*___ *Jeffrey K. Van Etten* __

                                                          **JEFFREY K. VAN ETTEN**

                              *Print Signer's Name* _____

---

*Service of a copy of the within*                                              *is hereby admitted.*
*Dated:*

                              _____

                              *Attorney(s) for*

---

**PERRY ,VAN ETTEN, ROZANSKI & KUTNER, LLP**
*Attorneys for*
**14 Wall Street**
**Suite 4D**
**New York, New York  10005**
**(212) 406-9710**