USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/9/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
GERGELY CSIKOS, :
:
Plaintiff, :
-against- :
: 18-CV-9598 (VEC)
S.M. CONSTRUCTION & CONTRACTING, :
INCORPORATED, AND : ORDER
230 PARK SOUTH APARTMENTS, :
:
Defendants. :
-------------------------------------------------------------- X
230 PARK SOUTH APARTMENTS, :
:
Cross-Claimant and Third-Party Plaintiff, :
:
-against- :
:
S.M. CONSTRUCTION & CONTRACTING, :
INCORPORATED, :
Cross-Defendant, :
:
REMODEL ART CORP. AND ALIN :
VADANUTA, ;
:
Third-Party Defendants. :
-------------------------------------------------------------- X
230 PARK SOUTH APARTMENTS, :
:
Fourth-Party Plaintiff, :
:
-against- :
:
IAN REISNER, IR HOLDINGS LLC, :
PARKVIEW DEVELOPERS LLC :
:
Fourth-Party Defendants. :
-------------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

Plaintiff Gergely Csikos ("Csikos") sued for damages caused when he fell from a ladder.

Compl., Dkt. 1. Plaintiff originally sued both 230 Park South Apartments (the "Building"), the

owner of the premises where the accident occurred, and S.M. Construction & Contracting, Inc., his employer at the time of the fall. *See id.* Plaintiff has since dismissed S.M. Construction & Contracting, leaving the Building as the sole Defendant.[1] Now before the Court are (1) Plaintiff's motion to exclude the opinion and testimony of the Building's engineering expert Andrew Yarmus, and (2) the Building's motion *in limine* to preclude certain testimony from Dr. Lattuga, Dr. Carfi, Ms. Kucsma, and Mr. Betz, who are Plaintiff's experts. Dkts. 193, 210. For the reasons discussed below, Plaintiff's motion is GRANTED in part and DENIED in part, and Defendant's motion is DENIED.

## I.   BACKGROUND

The Court assumes familiarity with its prior opinions issued over the course of this litigation and will summarize only the most pertinent facts. On October 19, 2018, Plaintiff sued the Building and others for negligence and for violation of New York Labor Laws §§ 200, 240(1), and 241(6). *See* Compl. ¶¶ 51–60.[2] Plaintiff claims that he was injured when he fell off a ladder on June 25, 2018, while doing work at 230 Central Park South, a building owned by Defendant 230 Park South Apartments. *See generally* Pl. 56.1 Stmt., Dkt. 167-8; Def. 56.1 Stmt., Dkt. 171.

---

[1]   On December 7, 2018, the Building cross-claimed against S.M. Construction & Contracting, Inc. *See* Dkt. 14. On October 30, 2019, the Building impleaded Remodel Art Corp. and Alin Vadanuta. *See* Dkts. 62, 65. On January 7, 2021, the Building, with leave of the Court, impleaded Fourth-Party Defendants Ian Reisner, IR Holdings, LLC, and Parkview Developers, LLC. *See* Dkts. 122, 129. The Building's claims have not been resolved; the instant motions involve only Plaintiff and the Building.

[2]   On May 5, 2021, Plaintiff moved for summary judgment against Defendant on Plaintiff's § 200 and § 240(1) claims. *See* Dkt. 162. Defendant opposed Plaintiff's motion and cross-moved for summary judgment on all claims. *See* Dkts. 169,172. On December 3, 2021, this Court granted Defendant's summary judgment motion as to Plaintiff's negligence, § 200, and § 241(6) claims, but denied the cross-motions for summary judgment as to Plaintiff's § 240(1) claim. *See* Opinion & Order, Dkt. 184. Thus, Plaintiff's only remaining claim is his claim against the Building under § 240(1) of the New York Labor Law.

The parties vigorously contest the facts surrounding Plaintiff's fall. Plaintiff claims that he was standing on the fourth step of an unsecured A-frame ladder to demolish the ceiling of the building's fifth-floor hallway, and that, while he was removing a piece of sheetrock, the ladder moved, causing him to fall. Pl. 56.1 Stmt. ¶¶ 18–21. Defendant generally denies liability for the fall, arguing that the "alleged accident" occurred after the ladder was "placed and secured," and that, based on the respective heights of the ceiling and Plaintiff, Plaintiff could not have been working from higher than the first step of the ladder. Def. 56.1 Stmt. ¶¶ 18–19; 21, 27; Def. Reply 56.1 Stmt. at 7, Dkt. 177.

On January 28, 2022, Plaintiff filed a *Daubert* motion to preclude the testimony of Defendant's engineering expert Andrew Yarmus.[3] Dkt. 193. On March 11, 2022, Defendant filed a motion *in limine* to preclude the testimony of Dr. Lattuga, Dr. Carfi, Ms. Kucsma, and Mr. Betz, Plaintiff's experts. *See* Def. Mot., Dkt. 210; *see also* Order, Dkt. 216.[4] Plaintiff opposes the motion. Pl. Opp., Dkt. 219.

### A. Defendant's Expert Andrew Yarmus

Andrew Yarmus is a licensed Professional Engineer and a New York State Certified Code Enforcement Official. Def. Rule 26 Discl., Dkt. 104; Def. Opp., Ex. B, Dkt. 209-2 (hereinafter, the "Yarmus Report"). Yarmus has a bachelor's degree from the School of Civil

---

[3] Plaintiff's *Daubert* motion initially included Defendant's other experts, arguing, *inter alia*, that Defendant failed to produce Rule 26 expert reports for Dr. Bonomo (Defendant's neurologist) and Dr. Chernoff (Defendant's orthopedic surgeon). *See* Pl. Mem. at 2–4, Dkt. 195. Plaintiff also argued that Dr. Greenfield, Defendant's radiology expert, failed to show each step of his analysis, and that Dr. Chernoff failed to review the actual MRI films of Plaintiff's cervical spine. *See id.* at 9–11. The Court granted Defendant's request to re-open expert discovery as to Drs. Bonomo, Chernoff, and Greenfield so that Plaintiff could depose those experts. *See* Dkt. 206. Plaintiff subsequently withdrew his challenges to those experts and now challenges only Andrew Yarmus, Defendant's engineering expert. Pl. Reply at 1, Dkt. 215.

[4] Defendant's motion *in limine* was, in many respects, modeled on a *Daubert* motion. But because Defendant failed to timely file a *Daubert* motion, the Court ordered that it would only consider those portions of Defendant's motion that could be properly treated as motions *in limine*. Order, Dkt. 216.

and Environmental Engineering at Cornell University. Yarmus Report at 3. He is also a Registered Professional Industrial Hygienist, a Certified Environmental Inspector, and a Certified Planner. *Id.* His consulting work includes, *inter alia*, building and safety code compliance; construction and project management; and physical condition surveys. *Id.* Yarmus's inspection experience includes compliance with building codes and standards. *Id.*

Defendant asked Yarmus "to opine, with a reasonable degree of Engineering certainty, as to whether there is any evidence in the documentation provided and reviewed that the ladder in use violated" applicable New York law. *Id.* at 4. Yarmus reviewed most of the record in this case[5] and concluded "that the evidence reviewed does ***not***, in fact, support [P]laintiff's claims." *Id.* ¶ 18 (emphasis in original).[6]

In sum, and in relevant part, Yarmus reached the following findings and opinions:

- An A-frame ladder is "considered to be an appropriate, self-supporting safety device," and "[w]hen properly used (i.e. standing erect, not leaning, and maintaining appropriate contact with the ladder), such a ladder is considered to be a stable and safe device for working at an elevation above floor level." *Id*. ¶ 8.

- Based on Plaintiff's testimony that he fell from the fourth rung of the ladder, Plaintiff was approximately four feet from the floor at the time of the fall (regardless of which ladder he was using). *Id.* ¶ 5.

- At not less than six-feet tall, the top of Plaintiff's head would have been at a height of at least ten feet if he were "properly standing erect at the time of his alleged accident." *Id.* ¶ 5.

---

[5] Among other materials, Yarmus reportedly reviewed deposition testimony from Plaintiff, Daragh Quinn, Alin Vadanuta, Paul Anzelde, and Shlomo Moallem. Yarmus Report at 1–2. He also reviewed the Statement of Paul Anzelde dated January 14, 2019, and the Statement of Robert J. Halabov dated January 11, 2019. *Id.*

[6] Yarmus's Report also included opinions that violations of Sections 1.5, 1.7, 1.8, 1.15, 1.16, 1.17, 2.1, and 5 of NYS Industrial Code are "not adequate to support allegations under NYS Labor Law 241(6)," Yarmus Report ¶¶ 9–16, and that violations of OSHA regulations 1926.100, 104, 105, 451, 452, 501, 502, and 503 are "not considered to be adequate under NYS law to support claims under NYS Labor Law 241(6)," *id.* ¶ 17. Yarmus further opined that even if they were adequate, "the alleged violations are unrelated to [P]laintiff's claims." *Id.* Because the only remaining claim at issue arises under New York Labor Law Section 240(1), these so-called opinions are no longer relevant.

4

- Because the ceiling was between eight and 10-feet high, Plaintiff's "account of the accident ***could not have occurred***" unless he "was ***improperly and unsafely leaning over while working*** from the ladder, rather than standing on a lower step of the ladder in a proper and non-leaning position." *Id.* ¶ 5 (emphasis in original).

- "Neither alternative supports [P]laintiff's allegations of an improper or unsafe ladder being provided to him for the work he was performing. Instead, they would seem to indicate that the accident either didn't occur as alleged, or that it occurred because [P]laintiff was improperly using an appropriate A-frame ladder which was noted to have been in good condition." *Id.* ¶ 5.

- Plaintiff's account of the fall "was not consistent" with other facts and "therefore call[s] into question whether his claims are valid," because the hospital reports indicate that Plaintiff said he was "ascending the ladder, and fell from the 3rd step." *Id.* ¶ 6.

**B. Plaintiff's Experts**

Plaintiff intends to offer expert testimony from Dr. Joseph Carfi, Dr. Sebastian Lattuga, Kristin Kucsma, and Kenneth Betz. Dr. Carfi prepared a clinical evaluation report, which relied on Plaintiff's medical reports from other experts, as well as an interview with Plaintiff. *See* Def. Mot., Ex. G, Dkt. 210-8 (hereinafter the "Carfi Report"). Dr. Carfi's report includes a "Life Care Plan," which he developed "based upon the medical records, history, and physical examination" of Plaintiff. *Id.* at 6. The Life Care Plan itemizes Plaintiff's ongoing care needs and approximates costs associated with those needs, including medications, diagnostic studies, medical supplies and equipment, and other therapies. *See id.* at 7–14 (hereinafter, the "Life Care Plan").[7]

Dr. Lattuga is Plaintiff's treating physician and a spinal surgeon at New York Spine Specialist. *See* Pl. Expert Disclosure, Dkt. 210-7 (hereinafter the "Lattuga Disclosure"); *see also* Pl. Opp. at 13. Dr. Lattuga performed two surgeries on Plaintiff — a cervical fusion on March 26, 2019, and a discectomy on August 6, 2020 — and continues to provide Plaintiff post-operative care on a regular basis. Pl. Opp. at 13. Dr. Lattuga is expected to testify that Plaintiff

---

[7]   The Life Care Plan is included in the Carfi Report as a separately paginated document.

5

was pain and symptom-free prior to the incident and that, ever since, Plaintiff has "severe pain and physical limitations." Lattuga Disclosure ¶ 6.

Finally, Ms. Kucsma and Mr. Betz prepared a report titled "Appraisal of Economic Loss Resulting from Injury to Gergely Csikos," which described Plaintiff's past lost earnings, future lost earnings, and the cost of lifetime care. Pl. Opp. at 7; *see also* Pl. Expert Disclosure, Dkt. 210-9 (hereinafter, the "Appraisal"). In calculating lifetime care, Kucsma and Betz relied on Dr. Carfi's report and projections described in his Life Care Plan. *See id.*

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs expert testimony. It provides that a person "qualified as an expert by knowledge, skill, experience, training, or education" may offer opinion testimony if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

"It is a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions . . . ." *Nimely v. City of New York,* 414 F.3d 381, 395 (2d Cir. 2005). The proffering party bears the burden of establishing admissibility under Rule 702 by showing that (1) the expert is qualified; (2) the proposed opinion is based on reliable data and methodology; and (3) the proposed testimony would be helpful to the trier of fact, but it is the district court that serves as the "ultimate gatekeeper" against unreliable expert testimony. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (internal quotation marks omitted).

Ultimately, the threshold question is whether the "proffered expert testimony is relevant." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002). An expert's opinion is relevant if it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Proffered testimony is not helpful to the jury if it "usurp[s] either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *Nimely*, 414 F.3d at 397 (citation omitted). An expert's opinion will be precluded if it "undertakes to tell the jury what result to reach" and "attempts to substitute the expert's judgment for the jury's." *Id.* (citing *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)). "While an expert may opine on an issue of fact within the jury's province, an expert may not give testimony stating ultimate legal conclusions based on those facts." *Snyder v. Wells Fargo Bank, N.A.*, 2012 WL 4876938, at *5 (S.D.N.Y. Oct. 15, 2012) (cleaned up).

## III.  DISCUSSION

### A.  Plaintiff's *Daubert* Motion

Defendant offers Andrew Yarmus as a "construction safety expert" who will testify regarding "whether [P]laintiff was required to utilize a safety device, such as a ladder, for the task he was performing at the time of the incident and/or whether a safety ladder, if utilized, was the proper safety equipment." Def. Opp. at 5–6.[8] Defendant asserts that Yarmus's testimony will aid the jury in deciding whether Defendant complied with Section 240(1) of the New York Labor Law. *Id.* at 6.

---

[8]  Because Defendant's brief omits page numbers, citations to page numbers refer to the ECF page number at the top of each page.

7

As relevant to his findings and conclusions, Yarmus noted that Plaintiff is at least six feet tall, Yarmus Report ¶ 3, the ceiling was between eight and ten feet high, *id.* ¶ 2, and the ladder Plaintiff was using at the time of the fall was either a five-foot fiberglass ladder or a six-foot aluminum A-frame ladder, *id.* ¶ 4.[9] Yarmus opines that proper use of a ladder would have required Plaintiff to be standing "on a lower step of the ladder in a proper and non-leaning position." *See id.* ¶ 5. Assuming the ladder rungs are each one foot apart, Yarmus concludes that if Plaintiff, who is at least six feet tall, were standing on the fourth rung of the ladder as he asserts, given a maximum ceiling height of ten feet, then he must have been leaning over when he fell. *See id.* In other words, Yarmus opines, Plaintiff was either improperly using the ladder or his account of where he was on the ladder before he fell is inaccurate. *Id.* Yarmus, citing to deposition testimony, states that the fiberglass ladder was "2-3 years old and was in generally good condition," *id.* ¶ 4, and that the A-frame ladder was "in good condition" and that Plaintiff "knew of no defects with the ladder," *id.* ¶ 7.

Plaintiff challenges the admissibility of Yarmus's expert testimony under Fed. R. Evid. 702. Pl. Mem. at 4; Pl. Reply at 3. First, Plaintiff argues that Yarmus is not qualified to opine on the circumstances of Plaintiff's accident because Yarmus is not an accident reconstruction expert. Pl. Mem. at 6. Plaintiff further argues that even if he were qualified, Yarmus's opinion that Plaintiff must have been "improperly and unsafely leaning over while working" when he fell is "wholly unsupported by the record," *id.* at 6, because Yarmus never "visited the site of the incident to measure the height of the ceiling," nor did he inspect the ladder from which Plaintiff allegedly fell to determine whether "it was in good condition and/or that it was an appropriate

---

[9] Yarmus notes that the record contains conflicting testimony about whether Plaintiff was using a six-foot aluminum A-frame ladder or a five-foot fiberglass ladder at the time of the incident, Yarmus Report ¶ 4, but whether Plaintiff was using a five-foot ladder or six-foot ladder has no bearing on his findings or conclusions, *id.* ¶ 5.

8

safety device," *id.* at 7; Pl. Reply at 2. Accordingly, Plaintiff argues that Yarmus's proffered testimony "lacks a reliable foundation" and is "nothing more than unsupported speculation and conjecture." Pl. Reply at 2. Plaintiff also claims that a jury does not need an expert to explain the "basic arithmetic" Yarmus used to reach the conclusion that Plaintiff could not have been standing erect on the fourth rung of the ladder when he fell. *Id.* at 7. Finally, Plaintiff argues that Yarmus's failure to address "an obvious 'alternative cause'" of the incident renders his proffered testimony inadmissible. Pl. Mem. at 8.

As a threshold matter, the Court finds that Yarmus's expert opinion is relevant insofar as it bears on safety standards under New York Labor Law. Yarmus's testimony about the proper use of a ladder may help a jury decide whether the ladder Plaintiff was using at the time of the accident was safe, which is a central issue in this case.[10] Although not an accident reconstruction expert, Yarmus is a professional engineer and a certified enforcement official of New York safety codes and a Registered Professional Industrial Hygienist. Yarmus Report at 9. Yarmus has an array of engineering experience, which includes consulting on building and safety code compliance and conducting field inspections of both indoor and outdoor construction sites. *Id.* Yarmus's experience renders him qualified to serve as a testifying expert on safety standards and the proper use of a ladder on construction sites. *See Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp.*, 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006) (the qualification requirement under FRE 702 is to be "liberally construed"); *In re Zyprexa Prods. Liab. Litig.*, 489

---

[10] Commonly known as the "scaffold law," Section 240(1) of New York Labor Law provides in pertinent part that: "All contractors and owners and their agents, . . . in the . . . repairing, altering, painting, [or] cleaning . . . of a building . . . shall furnish or erect, . . . for the performance of such labor, scaffolding [and] . . . ladders . . . which shall be so constructed, placed and operated as to give proper protection to a person so employed." N.Y. Lab. Law § 240(1); *Krafcsik v. Egnatia Constr. Inc.*, 2021 WL 4198218, at *2 (S.D.N.Y. Sept. 14, 2021). To succeed on a claim brought under Section 240(1), Plaintiff must establish that Defendant violated the statute, and that the violation was the proximate cause of his injury. *Krafcsik*, 2021 WL 4198218 at *2. Failure to provide safety devices "constitutes a per se violation of the statute." *Id.*

9

F. Supp. 2d 230, 282 (E.D.N.Y. 2007) ("[T]he court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent," so long as the expert "has educational and experiential qualifications in a general field closely related to the subject matter in question"). Plaintiff's quibbles over Yarmus's lack of specialization go to the weight, not the admissibility, of his anticipated testimony. *Id.*; *see also McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1043–44 (2d Cir. 1995); *Fernandez v. Chios Shipping Co.,* 542 F.2d 145, 153–54 (2d Cir. 1976); *Zyprexa*, 489 F. Supp. 2d at 282.

Plaintiff further argues that Yarmus's opinion is conclusory and speculative because rather than visiting the accident site or inspecting the ladder himself, Yarmus relied on photographs of the room in which the accident occurred to ascertain the height of the ceiling and the quality of the ladder, Pl. Reply at 4, and that Yarmus cited no basis for his opinion that Plaintiff was improperly using the ladder when he fell, *id.* at 5. But Yarmus does not base these opinions on mere speculation; he bases them on record evidence, including Plaintiff's own deposition testimony, discovery responses, and medical records about Plaintiff's height, the height of the ladder, and the height of the ceiling. Yarmus Report ¶¶ 3, 5. Then, assuming the measurements most favorable to Plaintiff's account — i.e., that Plaintiff is six feet tall and the ceiling height was ten feet — Yarmus drew the conclusion that Plaintiff was leaning over if he was standing on the fourth rung of the ladder as he testified during his deposition. *Id.* Thus, Yarmus's opinions are not speculative; Plaintiff's quarrels with the factual predicate for Yarmus's opinion, including his alleged failure to consider "obvious" alternative causes of the fall, Pl. Mem. at 8, go to its weight, not its admissibility.[11] *See Adkins v. Gen. Motors Corp.*,

---

[11] Plaintiff's reliance on *Disabled in Action v. City of New York*, 360 F. Supp. 3d 240 (S.D.N.Y. 2019), is misplaced. *See* Pl. Reply at 4. The expert witness in that case admitted that he relied on an "eyeball test" to determine whether a building's architectural measurements met ADA standards, a legal question where inches can mean "the difference between compliance and noncompliance." *Disabled in Action*, 360 F. Supp. 3d at 245.

2005 WL 8154013, at *5 (E.D.N.Y. Mar. 30, 2005), *rev'd on other grounds*, 170 F. App'x 184 (2d Cir. 2006); *see also Boucher v. U.S. Suzuki Motor Co.*, 73 F.3d 18, 21 (2d Cir. 1996) ("[E]xpert testimony should be excluded if it is speculative or conjectural, or if it is based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison[;] other contentions go to the weight, not the admissibility, of the testimony.") (internal citations, quotations omitted).

The Court agrees with Plaintiff, however, that certain aspects of Yarmus's Report are inadmissible. Defendant proffers that Yarmus will opine on whether Plaintiff "was required to utilize a safety device, such as a ladder, for the task he was performing at the time of the incident and/or whether a safety ladder, if utilized, was the proper safety equipment." Def. Opp. at 6. While that testimony is permissible and within Yarmus's expertise, testimony about the consistency (or lack thereof) of Plaintiff's account of the incident with the facts is a "narrative . . . which a juror is equally capable of constructing."[12] *See In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004) (citations omitted). Such "simple inferences drawn from uncomplicated facts [would] serve only to buttress [Defendant's] theory of the case," *id.*, and fall within the province of the jury to draw its own conclusion. Although qualified to testify about ladder safety and proper use, Yarmus cannot testify to his conclusions that impermissibly usurp the fact-finder's role; nor can Defendant use Yarmus as a mouthpiece for its theory of the case.[13]

---

[12] Examples of this inadmissible testimony include Yarmus's conclusion that Plaintiff's "account of the accident could not have occurred" unless he was using the ladder improperly, *see* Yarmus Report ¶¶ 5–6, and that Plaintiff's account of the fall "call[s] into question whether his claims are valid," *id.* ¶ 6.

[13] Likewise, Yarmus cannot usurp the role of the Court by opining on whether Plaintiff's allegations are "inadequate to support [P]laintiff's claims" under certain provisions of NYLL or OSHA, Yarmus Report ¶¶ 9–17. *See Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 186 (S.D.N.Y. 2008) (precluding expert's opinion that certain regulations were violated because they constituted impermissible legal conclusions).

11

In sum, the Court denies in part Plaintiff's *Daubert* motion and finds Yarmus's expert testimony satisfies Rule 702 insofar as it pertains to proper use of an A-frame ladder, and whether the ladder Plaintiff was using at the time of the accident is generally safe to use for the work he was performing or if additional safety equipment was required. Yarmus may also testify about the ladder's specifications (e.g., the distance between each rung of the ladder).

### B. Defendant's Motion *in Limine*

Defendant seeks to limit expert testimony of four witnesses that Plaintiff has disclosed he may call at trial. First, Defendant seeks to limit Dr. Lattuga's testimony to the treatment he has provided Plaintiff up to the close of discovery in this case. *See* Def. Mem. at 8, Ex. N, Dkt. 210-14. Defendant also seeks to preclude Dr. Carfi from testifying about the cost of future medical care and lost earnings, including the cost of future psychological or psychiatric care, assistive devices, and various prescription medications. *See id.* at 8–10, 11–14. Finally, Defendant moves to preclude testimony from Ms. Kucsma and Mr. Betz about economic damages as well as future medical costs and damages (other than lost earnings). *See id.* at 14–15, 18. For the reasons discussed below, Defendant's motion is denied.

#### 1. Dr. Lattuga

Dr. Lattuga has been Plaintiff's treating physician since February of 2019. Pl. Opp. at 13. Defendant argues that Dr. Lattuga's expert disclosure violates Fed. R. Civ. P. 26(a)(2)(C) because it "fails to provide any summary or description as to plaintiff's future treatment and/or surgery or future medical care costs." *See* Def. Mem. at 6. Defendant also argues that the disclosure failed to "detail[] the nature of the future treatment and/or surgeries[] and future medical costs," thus necessitating an expert report. *Id.* at 7–8. Accordingly, Defendant argues

12

that the Court should limit Dr. Lattuga's testimony to treatment he provided Plaintiff up to the fact discovery deadline. *See id.*

Under the Federal Rules, disclosures for experts who are not specifically "retained or employed to provide expert testimony" require a "summary of the facts and opinions to which the witness is expected to testify." *See* Fed. R. Civ. P. 26(a)(2)(B) & (C)(ii). Testimony from a treating physician "can be of three different types: (1) testimony limited to facts acquired and opinions formed during consultation; (2) testimony that also includes reliance on outside sources, such as another doctor's records or opinions or facts acquired as part of litigation; and (3) testimony where circumstances suggest the doctor was 'retained or specially employed to provide expert testimony.'" *Rodriguez v. Vill. of Port Chester*, 535 F. Supp. 3d 202, 214 (S.D.N.Y. 2021) (citing *Ali v. Connick*, 2016 WL 3002403, at *9 (E.D.N.Y. May 23, 2016)). While the third category requires compliance with Federal Rule of Civil Procedure 26(a)(2)(B), "the second falls under the purview of Rule 26(a)(2)(C)." *Id.* (cleaned up).

According to Plaintiff's Rule 26 Disclosure, Dr. Lattuga was not "retained or compensated by counsel for any purpose in connection with this case," and "will base his facts, opinions and conclusions on" Plaintiff's medical history, medical records, "and his continued treatment of Plaintiff." Lattuga Disclosure ¶¶ 7, 8. The disclosure further indicated that "Dr. Lattuga is expected to testify that Plaintiff presently has severe pain and physical limitations involving his neck, upper extremities, spine, lower extremities and will require additional treatment and/or surgery to assist him in being able to function with as many daily living activities as are or will be possible. Dr. Lattuga is also expected to testify as to Plaintiff's future

medical needs and cost thereof." *Id.* ¶ 6.[14] Accordingly, Dr. Lattuga's anticipated testimony falls comfortably within the second category of Rule 26(a)(2)(C).

Although perhaps not as detailed as Defendant might have liked, Plaintiff satisfied the requirements of Rule 26 by providing a summary of the facts to which Dr. Lattuga will likely testify, including Plaintiff's need for future surgery or treatment. The Court sees no reason to limit Dr. Lattuga's testimony to the treatment he provided Plaintiff up to the close of fact discovery, particularly because Dr. Lattuga has been continuously treating Plaintiff since February 4, 2019. *See Rodriguez*, 535 F. Supp. 3d at 214 ("Testimony limited to such personal knowledge may include the physician's opinions regarding the patient's condition, diagnosis, treatment and *prognosis* based on his or her observations of the patient during the period of consultation.") (emphasis added). Nor does Defendant offer any basis for the Court to consider Dr. Lattuga an expert witness specially retained to provide expert testimony such that Plaintiff would be required to provide the more comprehensive expert report contemplated under Rule 26(2)(B). Accordingly, Defendant's motion *in limine* with respect to Dr. Lattuga is denied.

### 2. Dr. Carfi

Defendant also moves to preclude Dr. Carfi from testifying about the cost of future medical care because Plaintiff has not complied with Rule 26(a)(1)(A)(iii) and because Dr. Carfi failed to provide any documentation to support a computation of future medical costs. *See* Def. Mem. at 8–10. Defendant also argues that Dr. Carfi should be precluded from testifying about

---

[14] Plaintiff further provided Defendant with the "operative report and an authorization to obtain the relevant medical records" after Plaintiff's post-discovery surgery. Pl. Opp. at 16. When Plaintiff underwent a second surgery, Plaintiff provided a supplemental disclosure documenting a post-op visit with Dr. Lattuga on November 2, 2020. *See* Dkt. 210-13. The supplemental documentation states that Plaintiff "continues to have some residual pain and symptoms consistent with pre-operative conditions," and directs that Plaintiff "continue physical therapy/HEP" and have another follow-up visit. *Id.* at 3.

14

(a) the costs of future psychological or psychiatric care; (b) the costs of various assistive devices; and (c) the costs of various prescription medications, each on the grounds that future costs are not recoverable because Plaintiff does not currently require or seek such care. *See id.* at 8–10, 11–14.

Rule 26(a)(1)(A)(iii) requires parties, as part of their Initial Disclosures, to provide "a computation of each category of damages claimed by the disclosing party," and "make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based." Fed. R. Civ. P. 26(a)(1)(A)(iii); *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 155 (S.D.N.Y. 2012).

On February 11, 2019, Plaintiff disclosed that he would seek damages for "future cost of health care" and "loss of household services." *See* Def. Mot., Ex. B, Dkt. 210-3 (hereinafter, "Pl. Rule 26 Initial Disclosures"). With respect to these anticipated damages, Plaintiff disclosed that he had "not yet retained the expert services of a life care planner," and that "the amount of the future cost of health care and its calculation will be provided upon the retention of [P]laintiff's experts and the relevant reports will be exchanged pursuant to the Case Management Plan." *See id.* at 3. Subsequently, Plaintiff disclosed Dr. Carfi's six-page narrative report, as well as an eight-page Life Care Plan, which "lists the various categories of items Mr. Csikos will require — Medical Care, Medications, Diagnostic Studies, Medical Supplies and Equipment, Home Equipment Adaptations, and Therapies — and the annualized cost for each." Pl. Opp. at 1; *see also* Carfi Report. The Life Care Plan identifies "each item Mr. Csikos will require, its purpose, the frequency it is needed, and its cost. Dr. Carfi then computes the annual cost to Mr. Csikos for each item." Pl. Opp. at 1–2. Dr. Carfi disclosed the sources on which he relied to derive the estimated annual costs of Plaintiff's future medical expenses, including quoted prices from

15

retailers such as Walgreens and Amazon, and listed three separate licensed therapists for the estimated cost of mental health treatment. *See* Life Care Plan at 7. Dr. Carfi's report states that Plaintiff's injuries are "permanent." Carfi Report at 6.

In short, Plaintiff fulfilled his disclosure obligations with respect to future medical costs. Plaintiff indicated in his Initial Disclosures that he would be seeking damages for future health care costs, and he subsequently produced Dr. Carfi's report that included a detailed estimate of such damages.[15]

Defendant further seeks to preclude testimony regarding (a) the costs of future psychological or psychiatric care, claiming that such costs are not recoverable under New York law because Plaintiff testified at his deposition that he is not currently undergoing such treatment; (b) the costs of various assistive devices which Plaintiff has not utilized and which Plaintiff's treating physicians have not recommended; and (c) the costs of various prescription medications, which Plaintiff was not taking at the time of his deposition. Def. Mem. at 11–12. Essentially, Defendant argues that any testimony about costs of future care of which Plaintiff has not yet availed himself are too speculative for a jury to consider in a damages award.

Notwithstanding Defendant's argument to the contrary, the Court does not find that the cost of future psychological care is so speculative that the evidence must be precluded. The likelihood that Plaintiff will require future psychotherapy has been spelled out in Dr. Carfi's report: Plaintiff "admits to being depressed," "has difficulty getting out of bed at times," "feels lost from the world," "less like a man," and easily becomes irritable and angry. Carfi Report at

---

[15] Even if Plaintiff had failed to comply with his initial disclosure obligations, "[t]he remedy for a Rule 26 omission is properly sought via a Rule 37 motion to compel or an application for sanctions." *Gonzalez v. Scalinatella, Inc.*, 112 F. Supp. 3d 5, 18 (S.D.N.Y. 2015) (citing *Max Impact, LLC v. Sherwood Grp., Inc.*, 2014 WL 902649, *4–5 (S.D.N.Y. Mar. 7, 2014); *Williams v. Boulevard Lines, Inc.*, 2013 WL 5652589, *3 (S.D.N.Y. Sept. 30, 2013); *Serin v. N. Leasing Sys., Inc.*, 2010 WL 6501664, *1 (S.D.N.Y. Oct. 26, 2010)). Because initial disclosures were provided more than two years ago, it is puzzling that rather than timely moving for sanctions under Rule 37, Defendant decided to wait until months before trial to complain about Plaintiff's initial disclosures.

4. Most importantly, Dr. Carfi noted that Plaintiff would be "amenable to counseling if it was affordable and available." *Id.* The explanation for the discrepancy here is thus entirely reasonable and far less speculative than the case law on which Defendant relies.[16] *See, e.g., Roman v. Bronx-Lebanon Hosp. Ctr.*, 51 A.D.2d 529, 530 (N.Y. App. Div. 1976) (trial court erred when it admitted "wholly speculative testimony by a psychiatrist for the infant plaintiff as to the possible emotional problems that the infant plaintiff would have 10 years after the psychiatrist saw him and seven years after the trial").

Likewise, the costs of future assistive devices and prescription medications that Plaintiff may require — irrespective of whether Plaintiff currently requires such care — are not so speculative that a physician cannot opine on the likelihood Plaintiff will need such treatment in the future. Defendant can and should press Dr. Carfi on these claims during cross-examination, but a jury could reasonably find that Plaintiff will likely require psychotherapy, medication, or assistive devices in the future, despite not needing such care currently. Dr. Carfi personally examined Plaintiff and reviewed his prior medical records; he is well situated to opine on Plaintiff's need for treatment as he ages. In short, Defendant's motion to preclude Dr. Carfi's testimony is denied.

---

[16] According to Defendant, New York courts "generally refuse to permit plaintiffs to recover the costs of future psychological care if they have not already received such care and have no reasonable explanation for the discrepancy." *See* Def. Mem. at 12. The case law Defendant relies on for this proposition, however, is inapposite; the question those cases addressed was whether an award of damages for future psychological care was supported by the evidence presented at trial. *See Guerrero v. Djuko Realty, Inc.*, 300 A.D.2d 542, 543 (2d Dep't 2002) (finding damage award excessive because "there was no evidence at the inquest that the infant plaintiff was seeing a psychologist at the time of trial"); *Hernandez v. N.Y.C. Transit Auth.*, 52 A.D.3d 367, 369 (1st Dep't 2008) ("At the time of trial, plaintiff was not undergoing psychotherapy, even though that had been recommended to her. Nor did plaintiff's expert psychological witness establish her need for future psychotherapy with reasonable certainty."). At this stage, the Court sees no reason to preclude such testimony for purposes of deciding Defendant's motion *in limine*. Of course, if Plaintiff does not adequately lay a foundation at trial for receiving such testimony, an objection to this testimony will likely be sustained.

### 3. Ms. Kucsma and Mr. Betz

Defendant also moves to preclude the testimony of Ms. Kucsma and Mr. Betz, Plaintiff's economic experts, from testifying about economic damages. Defendant argues that Plaintiff has not complied with Rule 26(a)(1)(A)(iii) and that Ms. Kucsma and Mr. Betz do not provide any documentation to support a computation of damages. *See* Def. Mem. at 14–15, 18. Defendant further argues that Plaintiff failed to provide the "proper foundations for the computation of his damages pertaining to . . . lost earnings (past and future)."[17] *Id.* at 9.

As noted above, Rule 26(a)(1)(A)(iii) requires Plaintiff to provide a computation of damages and make available for inspection and copying documents and materials "on which such computation is based." Defendant concedes that "a computation [of damages] has been proffered in this instance." *Id.* at 15. Defendant does not contend that any particular category of damages was omitted nor that Plaintiff failed to make available the documents that supported his computation of damages. Instead, Defendant claims that Plaintiff's Initial Disclosures were deficient because the experts "fail[ed] to provide a sufficient foundational basis for the expert opinions and computations being proffered," did not "rely on any documentation other than a 'single check,'" and ignored "prior documentation on significantly less claimed earnings." Def. Mem. at 15.

Challenges to the factual predicate of an expert's opinion are properly raised in a *Daubert* motion, which Defendant neglected to make in a timely fashion. *See* Order, Dkt. 216. Whether the economic experts should have relied on more than a single paycheck or should have considered income from other sources are suitable questions for cross-examination. They may

---

[17] To the extent that the Court were to find Dr. Carfi's opinion inadmissible, Defendant also moved to preclude Kucsma or Betz from testifying about future medical costs and damages (other than lost earnings) because their opinions are based on that of Dr. Carfi. Def. Mem. at 18. Because the Court finds Dr. Carfi's opinion on future health care is admissible, *see supra*, that aspect of Defendant's motion is denied as moot.

have even been the basis for a credible *Daubert* motion. They do not, however, warrant outright preclusion. Moreover, as previously noted, Rule 26 did not require Plaintiff to furnish any and all documentation his experts would rely on to support their conclusions. Plaintiff needed only to make such materials available to opposing counsel.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Daubert* motion is GRANTED in part and DENIED in part; Defendant's motion *in limine* is DENIED. The Court previously ordered that the parties submit a Joint Pretrial Order, pursuant to Rule 8.A of the Undersigned's Individual Practices, by April 8, 2022, but no such order has been filed. IT IS HEREBY ORDERED that the deadline to submit the Joint Pre-Trial Order is **September 1, 2022**. A final pre-trial conference will be held on **Thursday, October 6, 2022 at 2:30 p.m.** in Courtroom 443 of the Thurgood Marshall Courthouse, 40 Foley Square, New York, New York, 10007. Jury selection and trial are scheduled to begin on **Monday, October 17, 2022 at 10:00 a.m.**

If the parties are interested in a settlement conference with their assigned Magistrate Judge, they should promptly write a joint letter requesting a referral. The Court will not adjourn the scheduled trial date for that purpose.

**SO ORDERED.**

Date: August 9, 2022
New York, New York

_____
VALERIE CAPRONI
United States District Judge